IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| UNITED STATES | * |
| | * |
| v. | *   Case No.:   6:19-CR-16-2-REW |
| | * |
| DANIEL S. NANTZ | * |

**DEFENDANT'S MOTION FOR PRE-AUTHORIZATION DISCOVERY**

COMES NOW the Defendant, Daniel S. Nantz, by and through his counsel Gary E. Proctor, Paul Crolley and B.J. Foley and respectfully represents the following to the Court:

## I. Introduction

Defendant Daniel S. Nantz is charged with seven counts in the Government's indictment of Tampering with a Witness, Victim or Informant in violation of 18 U.S.C. § 1512(a)(1)(C), Kidnapping in violation of 18 U.S.C § 1201(a)(1), two counts of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 846, two counts of Possession of a Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. § 924 (c), and Possession of a Firearm in violation of 18 U.S.C. § 922(g)(9). More specifically, in Count One the government alleges Nantz willfully, deliberately, maliciously, and with premeditation and malice forethought, did unlawfully kill Geri D. Johnson. Nantz faces the possibility of capital punishment.

## II. General Nature of "Pre-Authorization" Discovery

The Indictment carries a potential death sentence for Nantz and the case is currently in the "pre-authorization" stage, i.e., prior to the Attorney General's decision whether to seek execution. Nantz if fighting for his life and has a legitimate and bona fide desire to make a meaningful and persuasive presentation to the United States Attorney and/or the Department of Justice Capital Review Committee. His case is currently set for Death Penalty Review in front of the Department of Justice Capital Review Committee in Washington, D.C. on January 27, 2020

at 9:00am. Accordingly, he requests relevant discovery in order to do so. In general terms, Nantz seeks victim information which is mitigating, additional *Brady*, *Giglio*, and favorable (mitigating) evidence, Rule 16 materials, and *Jencks* Material.

The information sought herein is requested after careful analysis of the discovery provided to date and preliminary defense investigation. None of the items are mere "fishing expeditions" or "boilerplate" requests, but rather are supported by specific, good faith reasons to believe that the materials and information exist.

Furthermore, and importantly, a significant portion of the materials and information requested may well be exculpatory and/or favorable in nature, so that the present debate is not merely one of entitlement, but also one of timing. As will be shown infra, substantial policy considerations weigh in favor of prompt disclosure. All doubts as to our entitlement should be resolved in Nantz's favor. See, e.g. *Eakes v. Sexton*, 592 Fed.Appx. 422, 428 (6th Cir. 2014) (quoting *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) ("… a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence.")), *United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure."), *United States v. Johnson*, 840 F.Supp. 634 (E.D.Wis. 1993)("All doubts should be resolved in favor of disclosure. A prosecutor will never get in dutch for disclosing too much. When everything is not disclosed, a prosecutor is asking for trouble"), *United States v. McVeigh*, 954 F.Supp. 1454 (D.Colo. 1997)("Doubts must be resolved in favor of disclosure"), *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003)("the government should err on the side of disclosure when interpreting its *Brady/Giglio* obligations given the need for the utmost reliability in capital proceedings").

**Mitigation investigation and pre-authorization discovery**

The American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003)(hereinafter "ABA Guidelines") make it

2

abundantly clear that "[i]nvestigation and planning for both phases of the case (Guilt/Innocence Phase and Sentencing/Penalty Phase) must begin immediately upon counsel's entry into the case, even before the prosecution has affirmatively indicated that it will seek the death penalty". ABA Guidelines 1.1, Commentary. See also ABA Guidelines, Introduction ("These Guidelines … apply in any circumstance in which a detainee of the government may face a possible death sentence, regardless of whether … the prosecution has affirmatively indicated that the death penalty will be sought. The case remains subject to these Guidelines until the imposition of the death penalty is no longer a legal possibility"). *See also, In re Sterling Suarez,* 306 F.3d 1170, 1171(1st Cir. P.R. 2002)(holding that statute requiring "prompt" appointment of learned counsel means "promptly after indictment, not only after the Attorney General has made a determination to seek the death penalty").

As the First Circuit has recognized, "the submission to the Attorney General is a comparatively informal one and in those cases where the opposition succeeds in persuading the Attorney General not to seek the death penalty, a substantial additional expenditure on the trial and sentencing phase of a capital case is likely to be avoided". *Sterling Suarez*, 306 F.3d at 1174. Much of the discovery requested herein is highly relevant to our ability to make meaningful arguments to the Attorney General against the death penalty, and is therefore far from "premature".

As well, since mitigation is by definition "favorable" as to punishment, it is *Brady* material in the context of a capital case. *Brady v. Maryland*, 373 U.S. 83, 87 (U.S. 1963)("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment …"), *Coleman v. Mitchell*, 286 F.3d 417, 438 (6th Cir. 2001) ("*Brady* assures the production of exculpatory evidence material to either the guilty or penalty phases of a trial."). *See also, Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005) ("Under *Brady*, the government must disclose

3

favorable evidence that is material to either the defendant's guilt or possible sentence"), *Ward v. Hall,* 592 F.3d 1144, 1182 (11th Cir. 2010)("*Brady* counsels that once a defendant requests the discovery of any favorable evidence material to either guilt or sentence, the prosecution's suppression of such evidence, whether in good or bad faith, violates due process").

It is also important to remember that "the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations …". *Cone v. Bell*, 556 U.S. 449, at 470 n. 15 (2009). In support of this proposition, the Supreme Court cited to the ABA Model Rules of Professional Conduct 3.8(d) (2008):

> The prosecutor in a criminal case shall "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal")(emphasis added).

*Cone v. Bell*, 556 U.S. 449, at 470 n. 15 (2009).

**Expanded discovery for pre-authorization purposes**

Defendant's request for pre-authorization discovery is neither novel nor lacking in substantial precedent. District courts have broad discretion in regulating discovery. *Rhodes v. McDaniel*, 945 F.2d 117, 119 (6th Cir. 1991). District Courts, however, have long recognized the crucial importance of such information at this stage of the process. District Courts in the Sixth Circuit, and indeed throughout the nation have defined discovery rights expansively so that defense counsel can argue against death penalty certification before the Attorney General. In *United States v. Smallwood,* 5:08-CR-00038-R, 2009 WL 1734139 at *2 (W.D. Ky. June 18, 2009) the District Court held that "in the interest of justice … the United States shall disclose *Brady* exculpatory evidence to the Defendant in time for effective use in her arguments to the United States Attorney and the Capital Review Committee." The District Court noted:

> At this stage of the proceedings *Brady* may not mandate the disclosure of exculpatory evidence. However, a strong argument can be made that the

4

> determination of whether to seek the death penalty concerns the limits of punishment that the Government will ultimately seek. This process has safeguards that provide the Defendant an opportunity to present all favorable evidence to suggest that the death penalty is inappropriate in this case. Without *Brady* material Defendant could be inhibited in presenting all evidence favorable to the accused that is relevant to whether or not the United States will seek the ultimate punishment.

*Id.* at *1.

In *United States v. Delatorre*, 438 F.Supp.2d 892, 903 (N.D.Ill. 2006), the court ordered pre-authorization discovery, requiring the government to "produce mitigating and aggravating factors and other *Brady* material ... so that it may be used in defense counsels' arguments against pursuit of the death penalty to both the United States Attorney and the Department of Justice."

Likewise, in *United States v. Diaz*, 2005 WL 1575191 at *10 (N.D.Cal. June 30, 2005), the Court granted extensive pre-authorization discovery, expressing the view that "[t]he exigencies of capital litigation compel, as a practical matter, in order to ensure the fair and orderly disposition of the case, prompt disclosure of all information which will affect the choice of penalty."

In *United States v. Jackson*, 2003 WL 22023972 at *3 (S.D.N.Y. Aug. 27, 2003), the District Court held that "penalty determination relevant material within the scope of *Brady v. Maryland* and its progeny, must be produced in time to be used in defense counsels' argumentation against pursuit of the death penalty to both the United States Attorney and the Department of Justice." (citation omitted)

In *United States v. Ortiz,* 2012 WL 5379512 at *5 (N.D.Cal. 2012), the District Court stated that it "finds persuasive those cases that hold that a district court may order accelerated discovery of *Brady* information -when appropriate based on the facts of the specific case -in a capital case to aid in the defense's presentation of its case before the capital case committee."

The Court further noted that:

The court is not requiring identification of witnesses or privileged information, only preauthorization discovery requiring the government to produce information about mitigating and aggravating factors and other *Brady* materials so that they may be used in defense counsel's arguments against the pursuit of the death penalty to the United States Attorney's Office and the Department of Justice.

### III. Discovery Requested

As noted above, mitigation is crucial in pre-authorization, both to establish positive mitigating factors which "would suggest, in fairness, that death is not the appropriate punishment", supra, and also to rebut (or mitigate) the aggravating factors upon which the Government might rely in seeking death. Further, as the District Court recognized in *Diaz*, "[t]he relative weakness and contradictions in the government[']s case will be significant to the defendants in making their presentations to the Department of Justice with respect to the Death Penalty." 2005 WL 1575191 at *3. In *United States v. Jackson*, the District Court similarly noted that "[d]uring the [authorization] process, prosecutors are encouraged and required to evaluate carefully the strengths as well as the weaknesses of their cases …", as well as "the factors in favor of and opposed to the imposition of the death penalty." 2003 WL 22023972 at *3. *See also*, United States Attorneys' Manual, §9-10.130(D) (listing "the strength and nature of the evidence" as one of the "Standards for Determination" whether the death penalty will be sought).

Accordingly, the discovery requests set forth below generally fall into one or more of the following broad categories:

- Information and evidence that will assist the defense in understanding and developing exculpatory or favorable evidence as to potential sentencing issues, including but not limited to mitigating factors,

- Information and evidence that will assist the defense in understanding and developing exculpatory or favorable evidence as to guilt issues, and

- Information and evidence that will assist the defense in understanding (and mitigating) the aggravating factors, including "strength and nature of the evidence", and discovery

6

concerning the surrounding facts and circumstances of the acts alleged against any death-eligible defendant.

### A. Victim information

#### 1. Criminal history information

Nantz seeks criminal history and background information known to the Government concerning the victims: Geri D. Johnson, along with eyewitnesses to the shooting, and any other Government witnesses. The government employed informants in putting its case together. Also, Nantz seeks criminal history and background information known to the Government concerning its informants any other informants the Government used in putting its case together. The United States Attorney's Manual, section 9-10.080, lists "the background and criminal record of the victim" as one of the required sections of the "Prosecution memorandum" to be submitted to DOJ pursuant to the death penalty protocol. Any such information concerning the victims is "mitigating" as to sentencing, and therefore should be disclosed.

#### 2. Information concerning victims' involvement with drugs and/or violence

Nantz seeks, in addition to the "background and criminal record" of each alleged victim, all information known to the Government concerning "[w]hether the victim engaged in criminal activity that was a relevant circumstance of the offense", as follows:

- Whether the victim was a member of, or associated with, a drug organization or other similar entity or group of individuals (hereinafter, simply "drug organization"),
- The nature and extent of the criminal activities of the drug organization, including any name, nickname, title or other identifying reference, geographical area of operations, etc., and each victim's role in the organization or group.

### B. Additional Brady, Giglio and favorable (mitigating) evidence

Apart from the "victim" information discussed above, Nantz requests "any and all information and material in the Government's 'possession, custody, or control' which might be

7

favorable, or mitigating, on the issue of whether the death penalty should be sought or imposed". Nantz requests such disclosure at this time so that he can properly investigate, develop and present such evidence and/or arguments to the Department of Justice prior to the Attorney General's authorization decision". This is precisely the purpose and justification of "pre-authorization discovery", as recognized in the cases discussed in the section (above) entitled "Expanded discovery for pre-authorization purposes". Although we gave several examples ("relative culpability" of certain individuals, "role in offense", "nature and strength of the Government's case", and similar considerations), we believe that it is appropriate and proper to require the Government to disclose "any and all information and material in the Government's 'possession, custody, or control' which might be favorable, or mitigating, on the issue of whether the death penalty should be sought or imposed". *See, e.g., Kyles v. Whitley*, 514 U.S. at 437 (recognizing that "ABA Standards for Criminal Justice … call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate"), *Willis v. Jones*, 329 Fed.Appx. 7, 16 (6th Cir. 2009) ("*Brady's* requirements of disclosure apply to "impeachment evidence as well as exculpatory evidence," … even if the accused does not ask for the evidence…."), and *Douglas v. Workman*, 560 F.3d 1156, 1172 (10th Cir. 2009)("The government's obligation to disclose exculpatory evidence does not turn on an accused's request").

    C. **Rule 16 material(s)**

Nantz seeks to inspect all physical evidence in the case, and requests a "formal listing of each such item in the government's possession, custody and control." Nantz asserts this is necessary in order to coordinate and facilitate the orderly, efficient and meaningful inspection of all physical evidence by defense counsel, with likely participation by FBI Agents and/or other members of the prosecution team. Nantz, therefore, requests the "formal listing" of all physical evidence.

### D. Request for schedule

Nantz requests the Court set a schedule requiring production of the requested items and categories of items within thirty (30) days, to enable the defense to make meaningful use of the information in preparing their mitigation submissions. There truly seems to be little reason for the government to withhold disclosure during the critical pre-authorization period. Additional reports, such as scientific and or forensic tests and the results thereof, such as DNA testing, ballistic and / or bullet match testing, etc should all be produced along with " written summaries" of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial', including a description of the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications" along with any 404(b) material or *Jencks* material the government intends to use at trial. Nantz requests that each of these items be produced by the government within 30 days, so that he may prepare a meaningful mitigation submission in a timely fashion for the January 27, 2020 Capital Review Conference.

Likewise, Nantz needs the government to provide notes of experts and others involved in scientific and/or forensic testing immediately. To make Nantz wait until "the schedule for *Jencks* material, provided that those witnesses testify," is prejudicial, since Nantz's experts will require those notes well in advance of trial, in order to conduct the required meaningful testing and analysis of their own. *See generally*, American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003), 10.7, Commentary ("Counsel should make a prompt request to the relevant government agencies for any physical evidence or expert reports relevant to the offense or sentencing, as well as the underlying materials. With the assistance of appropriate experts, counsel should then aggressively re-examine all of the government's forensic evidence, and conduct appropriate analyses of all other available forensic evidence").

### E. Identifications

The discovery provided to date contains insufficient information to investigate, research, draft and litigate meaningful Motions to Suppress identifications. Further, Nantz seeks all information concerning any purported witnesses who were shown a photograph of any Defendant (whether a single photo or part of multiple photos) and did not identify him. This is classic favorable evidence, and should be provided.

## IV. SPECIFIC EXAMPLES FROM DISCOVERY ALREADY PRODUCED

Counsel has reviewed the discovery provided to date. The list of examples is far from exhaustive, but may be illustrative for the Court. For example:

- Numerous witnesses have described that Mr. Nantz used multiple drugs around the time, and specifically the day of, Ms. Johnson's death.[1] In all of the reports received by the defense, the names and all identifying information has been redacted. This is significant because, both the Department of Justice Capital Case Section, and death penalty jurors, have considered the fact that the crime was committed while intoxicated to be a mitigating factor. The defense is, however, unable to identify and interview such witnesses due to the manner in which discovery has been provided;

- In the Kentucky State Police file, at page 57, a witness reported to law enforcement that Ms. Johnson "did not mention any plans on how she would handle her charges, as far as cooperating with law enforcement. She said Johnson gave the impression that she was solid and would do her time." Id. This directly undermines the indictment which states that Nantz killed Ms. Johnson "to prevent communication...to a law enforcement officer...of information relating to the commission of a Federal offense." ECF 32 at 1.

---

1  For example, in KSP Case Report at page 105 the person whose name is redacted told law enforcement "both he and Nantz had shot up meth on [the day Johnson was shot]." Counsel cannot even say with certainty whether this person is speaking from personal experience, or relaying hearsay from another, due to the quantum of redactions. Accord Report of Investigation (hereafter "ROI") 88.

10

- No identifying information for this witness has been furnished;

- In ROI 89 it states that Ms. Johnson had previously put a firearm to her head and stated that she wanted to kill herself. The name of the person is, again, redacted;

- The victim, in this case, was interviewed on October 8, 2018 by law enforcement and the notes indicate it was recorded. ROI 3. Counsel has not been furnished with said recording;

- In ROI 100 a witness narrates that Defendant was "already aware of the indictment [against Johnson] and told [name redacted] that Johnson loved him and he didn't think that Johnson would tell on him." Id. at 2. Again, this directly contradicts the purported motive and, if believed by a jury, would constitute an absolute defense;

- In ROI 112 a witness who has "known Daniel Nantz his entire life," reports that he "has never obtained drugs from Daniel." Again, this rebuts the drug charges included in the indictment, but the defense is unable to interview said witness;

- In ROI 86 it narrates that Mr. Nantz was interviewed by law enforcement on March 29, 2019 and that said interview was recorded. No recording has been furnished to the defense. To state the obvious: counsel should not have to rely on the agent's recollection of what was said;

- Count 2 alleges a kidnapping. Numerous people were present at the residence at which the kidnapping allegedly occurred and their stories seem to be mutually contradictory. Counsel uses the word "seem" because their respective statements are too heavily redacted to make much sense of;

Again, the preceding is simply some of the more glaring instances in support of the argument that the Court should order full, unredacted, discovery now.

### V. CONCLUSION

The nature of the charges and the Government's proof, the potential consequences, and

11

all other facts and circumstances that exist herein combine to create a scenario where the interests of justice are best served by full and complete disclosure of all requested materials at this stage of the proceedings. This Honorable Court has both the authority and the discretion to Order the requested disclosures. When human life is at stake, this is an abundantly reasonable request.

**WHEREFORE**, Nantz respectfully requests that this Honorable Court direct the Government to provide the discovery materials identified herein, forthwith.

Respectfully,

_____/s/_____

Gary E. Proctor
Bar Roll Number 27936
Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
Tel:   410.444.1500
Fax:   443.836.9162


   /s/  Paul K. Croley II
Law Offices of Croley
Foley & Cessna
West Short Street
Suite 820
Lexington, KY 40507
 (859) 367-0050
Paul.Croley@kylegal.com


   /s/       BJ Foley Jr.
Law Offices of Croley
Foley & Cessna
201 West Short Street Suite 820
Lexington, KY 40507
(859) 367-0050
BJ.Foley@kylegal.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this day, October 29, 2019, a copy of the foregoing was served on all parties via ECF.

                                              _____/s/_____

                                              Gary E. Proctor