UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>DANIEL SCOTT NANTZ,<br>    Defendant. | No. 6:19-CR-16-REW-HAI |

**REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR AN ORDER ALLOWING
THE JURY TO VIEW THE CRIME SCENE**

The Defendant, Daniel S. Nantz, by and through the undersigned counsel, replies as follows to the Government's response (D.E. 301) ("Resp."), to his Motion for an Order Allowing the Jury to View the Crime Scene (D.E. 251) ("Motion").

**I.   A Site Visit is Critical to Mr. Nantz's Defense.**

The government asserts that Mr. Nantz has "fail[ed] to articulate why the site visit is relevant on the merits or at sentencing with any detail." Resp. at 1. Not so. Mr. Nantz clearly explained that the remoteness of his trailer and the surrounding area was put directly in issue by the government. Indeed, the government relies on the actions allegedly taken by Mr. Nantz on his property during the time period immediately after Ms. Johnson was shot in support of at least two of its aggravating

factors. *See* D.E. 121 at 4 (alleging in support of "Future Dangerousness" aggravator that Mr. Nantz "prevent[ed] the victim, Geri D. Johnson, from obtaining immediate medical treatment, using the time before driving her to the hospital in an effort to conceal the crime"); D.E 222 at 15-16 (alleging that Mr. Nantz's actions "during that time period" support the "Heinous, Cruel, and Depraved Manner of Committing the Offense" aggravator). As a result, Mr. Nantz has every reason to believe that a central issue during a potential sentencing phase will be whether paramedics could have quickly located Ms. Johnson on his property—"a hollow which encompasses approximately 200 remote acres," Resp. at 2—and relatedly, whether he took the appropriate step, under the circumstances, of driving Ms. Johnson to the hospital himself. The remoteness of Mr. Nantz's trailer—and the corresponding difficulty of obtaining emergency medical treatment there—will therefore be a critical element of Mr. Nantz's penalty phase presentation. The physical layout of the property is also relevant to Mr. Nantz's defense of the substantive criminal charges in Count 1 as it will allow him to effectively rebut the government's likely argument that his course of conduct following Ms. Johnson's injury goes directly to his motive, intent, and planning.

The government's attempt to downplay the relevance of the Supreme Court's capital case law establishing a defendant's right to present "all relevant mitigating evidence" and requiring "heightened reliability" likewise misses the mark. Resp. at

2

1. As an initial matter, this Court has already recognized that it must "apply[] the extra scrutiny appropriate for a capital case." D.E. 298 at 3. That "extra scrutiny" is particularly appropriate here, as there "is no specific federal rule regarding whether a jury should be permitted to view [a crime scene]" and "the decision whether to grant a motion to allow a jury to view a scene rests within the sound discretion of [this Court]." *United States v. Sydnor*, 2008 WL 3077523, at *1 (E.D. Ky. 2008). Moreover, the Eighth Amendment's "require[ment]" that a jury "not be precluded from considering, as a mitigating factor … any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death," *Lockett v. Ohio*, 438 U.S. 586, 604 (1978), is directly implicated by Mr. Nantz's jury view request.

## II. Other Relevant Considerations Favor the Jury View Here

Mr. Nantz does not dispute that the government has produced numerous images of his property in discovery. *See* Resp. at 2. But that misses the thrust of his argument. The requisite information here cannot satisfactorily be introduced through documentary evidence alone—including photographs, diagrams, or even video—because Mr. Nantz does not seek to document any one discrete location or structure for the jury. Rather, to adequately present his case, Mr. Nantz must convey the vastness and remoteness of the property and, consequently, the difficulty of receiving emergency medical care there. As undersigned counsel previously

asserted, the *only* means to fully and accurately convey this critical information to the jury is by allowing the jurors the experience the layout themselves. In other words, a site visit is not, as the government contends, unnecessarily cumulative; it is *essential*.

Significantly, a site visit would present little likelihood of confusion here. Although several years have passed since March 2019, undersigned counsel can confirm that the area to be viewed is in substantially the same condition as it was on the date of the incident.

Finally, a jury view would neither be particularly time consuming nor present significant logistical and/or safety concerns. Undersigned counsel expect that a view of the crime scene would take less than one full day of the trial. While not *de minimis*, such a delay, particularly given the gravity of the charges, is not "substantial." Resp. at 2. The logistical and safety considerations presented by viewing a residential area, however expansive, are likewise not significant. *Cf. United States v. Moonda*, 347 F. App'x 192, 201 (6th Cir. 2009) (noting that "it would be a logistical nightmare to shut down all lanes of the turnpike for miles prior to the crime scene in an effort to accomplish this [jury view]" and "[w]ithout question, there would be inherent dangers in conducting a jury view next to a heavily trafficked turnpike"); *Sydnor*, 2008 WL 3077523, at *2 (recognizing significant safety and logistical concerns surrounding requested jury visit to Detention Center).

The parties, moreover, will work with the United States Marshals' Service to address any potential safety concerns before a formalized operational plan is presented to the Court.

## CONCLUSION

For all of the reasons set forth above and in D.E. 251, this Court should grant Mr. Nantz's Motion and enter an Order allowing the jury to view the scene of the crime.[1]

Respectfully submitted, this 26th day of October, 2021.

  /s/ *Gary E. Proctor*
Law Offices of Gary E. Proctor LLC
8 E. Mulberry Street
Baltimore, MD 21202
Tel: 410-444-1500; garyeproctor@gmail.com

  /s/ *Jeffrey L. Ertel*
Jeffrey L. Ertel
Federal Defender Program, Inc.
101 Marietta Street, NW, Suite 1500
Atlanta, GA 30303
Tel: 404-688-7530; Jeff_Ertel@fd.org
Counsel for Daniel S. Nantz

---

[1] In his Motion, Mr. Nantz requested "an order allowing the jury to view the scene of the crime before the trial commences." Motion at 5. The government responded that a "site visit cannot be accomplished in advance of trial as proposed, as it is evidence in and of itself." Resp. at 1-2 (citing *Lillie v. United States*, 953 F.2d 1188, 1190-92 (10th Cir. 1992). As *Lillie* itself explains, however, the Sixth Circuit has not fully embraced that position. *Id.*; *see also United States v. Walls*, 443 F.2d 1220, 1223 (6th Cir. 1971). In any event, Mr. Nantz now clarifies that he requests an order allowing the jury to view the scene at an agreed-upon time during the trial, preferably before any testimony is presented.

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Reply to Government's Response to Defendant's Motion for an Order Allowing the Jury to View the Crime Scene was electronically filed this day, October 26, 2021, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all parties of record in this matter.

                                                /s/ *Jeffrey L. Ertel*
                                                Jeffrey L. Ertel
                                                Jeff_Ertel@fd.org
                                                Counsel for Daniel S. Nantz