UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,
    Plaintiff,

v.                                              No. 6:19-CR-16-REW-HAI

DANIEL SCOTT NANTZ,
    Defendant.

---

## MOTION FOR DISCOVERY, INSPECTION, AND DISCLOSURE OF EXCULPATORY EVIDENCE CONCERNING THE GOVERNMENT'S USE OF INCENTIVIZED WITNESSES

The Defendant, Daniel S. Nantz, by and through the undersigned counsel, and pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution, Fed. R. Crim. P. 16(a) & 57(b), and the decisions in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1977), *United States v. Bagley*, 473 U.S. 667 (1985), and *Kyles v. Whitley*, 514 U.S. 419 (1995), respectfully moves this Court for an order directing the government[1] to furnish undersigned

---

[1] For purposes of this Motion and any disclosure resulting from it, "the government" will include the office of the United States Attorney for the Eastern District of Kentucky, the Department of Justice and its subdivisions, the Federal Bureau of Investigation, the United States Marshals Service, the Bureau of Prisons, and any law enforcement agency involved in any way in the investigation and preparation of this case or related cases for prosecution. *See* USAM § 9-5.001(B)(2).

counsel with the following information concerning its use of inmate witnesses, informants, confidential informants, snitches, and/or cooperating witnesses[2] (hereinafter collectively referred to as "incentivized witnesses") who participated in any way or who are material witnesses to any of the events charged in the superseding indictment.  Mr. Nantz shows the following in support:[3]

## **INTRODUCTION**

As noted in Mr. Nantz's contemporaneously filed Motion Requesting Pretrial Reliability Hearing to Evaluate Incentivized Witness Testimony, the government's case for Mr. Nantz's guilt and for a potential death sentence is based almost entirely on the testimony of incentivized witnesses, whose own freedom depends on their ability to testify against Mr. Nantz.  Such testimony is uniquely unreliable.  *See, e.g.*, *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) ("It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence[.]"); The Innocence Project, *Informing injustice: The disturbing use of jailhouse informants* (incentivized witness testimony is "one of the leading contributing factors of wrongful convictions nationally, playing a role in nearly one

---

[2] Such witnesses, informants, or individuals include, without limitation, any witness who is currently or formerly an inmate in the custody of the Bureau of Prisons or any state correctional department, who has, is expected to, or may in the future furnish information, cooperation, or assistance to the government.

[3] Mr. Nantz hereby requests oral argument on this motion pursuant to LCrR 47.1(g).

in five of the 367 DNA-based exoneration cases").  Mr. Nantz should not face a death sentence on the back of such inherently unreliable testimony.  At a minimum, therefore, this Court should direct the government to comply with Mr. Nantz's discovery requests, set forth *infra*, to ensure that he has a full and fair opportunity to assess the reliability and credibility of the incentivized witnesses testifying against him and to preserve his constitutional right to a fair trial.

## ARGUMENT

### I.  *Brady* and its Progeny Require the Disclosure of the Requested Discovery.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that due process requires the government to provide a defendant with all evidence favorable to his defense in its possession.  Evidence may be considered favorable to the accused, under *Brady*, if it is either: 1) exculpatory, 2) impeaching, or 3) mitigating. *See Strickler v. Greene*, 527 U.S. 263, 280-81 (1999); *see also Smith v. Cain*, 565 U.S. 73, 75 (2012) (the government "violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment").  Moreover, for purposes of *Brady*, it is irrelevant whether the government's failure to disclose the evidence was the result of inadvertence or bad faith.  *See, e.g.*, *Brady*, 373 U.S. at 87 (suppression of favorable evidence violates Constitution "irrespective of the good faith or bad faith of the prosecution").

Relevant here, the Supreme Court has emphasized that any evidence that the

defense "might have used to impeach the Government's witnesses by showing bias or interest" must be disclosed under *Brady*. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Indeed, such impeachment evidence could readily make the difference between conviction and acquittal. *See Napue v. Illinois*, 360 U.S. 264, 270 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend[.]"); *see also Giglio v. United States*, 405 U.S. 150, 154-55 (1972) ("Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it."). Here, moreover, where the government's case depends *almost entirely* on incentivized witnesses, the credibility, background, bias, motivations, and/or preferential treatment of those witnesses takes on added significance.

Moreover, the range and nature of benefits provided to government witnesses is entirely unpredictable. *See, e.g.*, *United States v. Andrews*, 824 F. Supp. 1273, 1285-87 (N.D. Ill. 1993) (finding that prosecutors, federal agents, and paralegals on the United States Attorney's staff provided the incarcerated witnesses with cigarettes, phone sex, cash, beer, "walkman" radios, and free local and long distance telephone service as well as arranged visits between witnesses and female

4

acquaintances during which the visitors had sex with the jailed government witnesses and supplied them with heroin, cocaine, and marijuana).  It is, therefore, critically important for Mr. Nantz to be explicit and complete in outlining the precise nature of his *Brady/Giglio* requests concerning the government's witnesses, particularly given the large number of incentivized witnesses and agencies involved in this investigation.   Accordingly, Mr. Nantz specifically requests that the government conduct a comprehensive review of all its informant/witness files and then disclose any information responsive to his discovery requests *infra*.

## II.   The Federal Rules of Criminal Procedure Authorize This Court to Order the Requested Discovery.

This Court's authority to order the government to comply with Mr. Nantz's discovery requests also flows from the Federal Rules of Criminal Procedure.[4]  Rule 16 states, in relevant part:

> "(E) Documents and Objects.  Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs … or portions of any of these items, if the item is within the government's possession, custody or

---

[4] It is noteworthy that on October 21, 2020, *after* Mr. Nantz was arraigned, President Trump signed into law the Due Process Protections Act which directly amended Rule 5 of the Federal Rules of Criminal Procedure by adding a requirement that trial judges "[i]n all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present," issue an oral and written order "confirm[ing] the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law."  Fed. R. Crim. P. 5(f)(1).  This amendment strengthens the government's preexisting duty to disclose.

control and:

> (i)   *The item is material to preparing the defense*.

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added).

To satisfy this Rule, a defendant "must make a *prima facie* showing of materiality." *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991). While "[m]ateriality under Rule 16 has not been authoritatively defined in this Circuit," this Court should "consider the logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole." *United States v. Lykins*, 428 F. App'x 621, 624 (6th Cir. 2011) (unpublished). Critically, moreover, materiality under Rule 16 should "not [be] a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993); *see also* 2 Charles Alan Wright et al., *Federal Practice and Procedure Criminal* § 254 (4th ed.) ("Too much should not be required in showing materiality.").

The information requested here is critical to Mr. Nantz's defense. Many of the most important disputed facts in the government's case-in-chief come from incentivized witnesses. For instance, the basis for seeking federal capital charges— that Mr. Nantz killed Ms. Johnson, an alleged federal witness, to prevent communication to law enforcement—rests *entirely* upon the self-serving, unverifiable statement of an incentivized witness. Accordingly, it is essential that

6

the defense have all relevant information concerning the circumstances and nature of the witnesses' relationships with state or federal agencies and officials. And as the requested information will be used to directly "refute the Government's arguments that [Mr. Nantz] committed the crime charged," *United States v. Robinson*, 503 F.3d 522, 532 (6th Cir. 2007) (quotation omitted), it is plainly material for purposes of Rule 16. *See Lykins*, 428 F. App'x at 624 (evidence is material if it could be used to "counter the government's case or bolster a defense") (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).

This Court also has the "inherent authority" to order the disclosure of *any* discovery in a criminal case. *United States v. Davis*, 93 F.3d 1286, 1295 (6th Cir. 1996). The Federal Rules of Criminal Procedure recognize that the rules cannot cover every situation that may arise during the course of a criminal case. Rule 57(b), therefore, expressly incorporates the inherent powers of district courts to fashion rules of discovery, providing that where no law or rule is directly applicable, "[a] judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district." Fed. R. Crim. P. 57(b); *see also Carlisle v. United States*, 517 U.S. 416, 428 (1996) (recognizing precedent "which approved exercise of a District Court's inherent authority to order [discovery]" where "such exercise did not conflict with Federal Rule of Criminal Procedure 16"). Indeed, the Advisory Committee Notes specifically emphasize that Rule 16 "is intended to prescribe the

*minimum amount of discovery* to which the parties are entitled.  It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." Advisory Committee Note to Rule 16, 1974 Amendment (emphasis added).

This capital trial, moreover, is plainly such an "appropriate case."  *See, e.g.*, *United States v. Beckford*, 962 F. Supp. 748, 756-57 (E.D. Va. 1997) (recognizing that capital proceedings, where there should be a "premium placed upon accuracy and fairness," would constitute "an 'appropriate case'" for broader discovery).  In this Circuit, it is "well settled that the penalty of death is different in kind from any other punishment imposed under our system of justice."  *Getsy v. Mitchell*, 495 F.3d 295, 306 (6th Cir. 2007) (en banc).  And the uniqueness of capital punishment demands extraordinary procedural and substantive safeguards at every stage of the process.  *See Gregg v. Georgia*, 428 U.S. 153, 187 (1976) ("Where a defendant's life is at stake, the Court has been particularly sensitive to insure that every safeguard is observed.").  Mr. Nantz should therefore be afforded a full and fair opportunity to assess the reliability and credibility of the incentivized witnesses testifying against him at his capital trial.  *See, e.g.*, *Ford v. Wainwright*, 477 U.S. 399, 411 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability.  This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different.") (citations omitted).

8

## DISCOVERY REQUESTED

Mr. Nantz hereby specifically requests that the government disclose the following information:[5]

1. Information as to whether any incentivized witness was suspected, apprehended, or convicted of any crime at any time.

2. Any and all information regarding any crimes or other breaches of law (including jurisdiction and case number) such incentivized witness committed or was suspected of having committed at any time.

3. Any and all information regarding breaches in BOP policies, rules and regulations by any incentivized witness regardless of whether disciplinary actions or criminal proceedings were initiated or pursued.

4. Information regarding any potential or existing criminal charges against any incentivized witness which were abandoned, altered, or otherwise disposed of upon his/her agreement to provide assistance to the government.

5. Information concerning any financial arrangements which existed or exist between any incentivized witness and the government or any state, including information concerning any sums of money paid or promised to any

---

[5] All responsive documents to be produced shall, where possible, be produced in their original form, in the order that they are kept in the ordinary course of business, and in their original folders, binders, covers, or containers, or facsimile thereof.

incentivized witness.  Mr. Nantz further requests copies of any vouchers for payment to any incentivized witness, or any other document reflecting any such payment.

6. Any and all formal or informal promises or inducements, payments, or other favors conferred by the government to reward, reimburse, or otherwise confer a benefit on a witness, including but not limited to money, liens in criminal prosecutions, assistance in forfeiture proceedings, living expenses, medical expenses, medical treatment, travel expenses, transportation expenses, lodging expenses, receipt of benefits, receipt of pension, modifications to sentence or conditions of confinement, or any other promises or concessions.

7. The names, addresses, and criminal records of any incentivized witness to be called as a witness at any hearing or during the trial.

8. The substance of any plea agreement, whether written or not, entered into by the government or any other state with any incentivized witness.  This request is intended to include agreements with any such individual by the government or any state to refrain from bringing or pursuing a criminal prosecution.  Mr. Nantz also requests disclosure of the name and position of the person authorizing entry into each such plea agreement.

9. All information which could reasonably be construed as tending to show bias or prejudice on the part of any incentivized witness whom the government

intends to call at trial.

10. All information which could reasonably be construed as tending to show that any incentivized witness has made contradictory or inconsistent statements regarding this case, any related case, or Mr. Nantz.

11. All information which could be construed as tending to show that any incentivized witness suffers from or suffered from any material defect in perception, memory, veracity, or articulation.

12. Any information concerning whether any incentivized witness has taken a polygraph examination regarding any information he or she has provided relative to this case or any other allegation of criminal conduct by Mr. Nantz and, if so, as to each such person:

    a. The name of the person;

    b. The date, time, and place of each such examination;

    c. The number of tests which were administered to each such person;

    d. The numerical scores for each such examination;

    e. All of the questions posed during each such examination;

    f. The name of the computer software used to administer the examination;

    g. The names and credentials of each person administering each such examination;

     h.  A complete and correct copy of the polygraph chart and the examiner's notes;

     i.  A copy of the pretest questionnaire and answers; and

     j.  The reasons for the decision to administer each such polygraph examination.

13. All information concerning whether any incentivized witness is or was at any time relevant to his provision of information an abuser of alcohol or controlled substances, including:

     a.  Each substance each such individual used or abused;

     b.  The quantity and frequency of any such use;

     c.  The extent of addiction;

     d.  The current status of each such individual with regard to his/her alcohol or drug abuse; and

     e.  Any and all psychological, psychiatric or counseling reports concerning any such individual's alcohol or drug abuse.

14. Information concerning whether any incentivized witness has ever had or required any psychiatric or psychological evaluation or treatment.  If so, Mr. Nantz requests disclosure of the following information:

     a.  The name, address and date of birth of each such witness;

     b.  The date and location of all such treatment;

    c.  The exact nature of the condition treated;

    d.  Whether the witness treated has ever been admitted to a hospital for psychological or psychiatric treatment, and if so, the dates and locations of such admissions, as well as the diagnosis and prognosis determined during each such admission;

    e.  Whether the witness is currently receiving treatment and, if so, the nature of such treatment and the nature of the condition being treated;

    f.  Whether and how the witness's condition and/or treatment was relevant to any legal proceedings against, on behalf of, or involving the witness.

15. The exact date, time, and place that any informant was engaged by any federal or state agency and the name of the agency or agencies.

16. All evidence regarding any witness the government intends to call who is listed as an informant for any agency of the United States Government or any agency of state government, including without limitation:

    a.  The exact nature of the relationship between the witness and the agency;

    b.  The date and circumstances of the origin of the relationship;

    c.  Whether each such relationship originated as a result of a criminal prosecution (or threat of criminal prosecution) of the informant;

    d.  The exact reason the relationship was established; and

    e.  The exact amount of money paid to any informant, when and by what method.

17. All materials contained in the files relating to each informant maintained by any state, local or federal law enforcement agency, including:

    a.  Correspondence requesting approval to initiate suitability and pertinence inquiry;

    b.  Indices checks;

    c.  NCIC inquiry and response;

    d.  Local arrest records;

    e.  Credit checks;

    f.  FD 302s, DEA 6s or equivalent government agency documents in which the identity of the informant has been revealed;

    g.  FD 209s or equivalent government agency documents containing administrative information that may tend to identify the informant;

    h.  Payment request memos;

    i.  Requests to FBI headquarters for additional payment authority;

    j.  Requests to FBI headquarters for lump sum payment authority; and

    k.  All other administrative type correspondence and any correspondence that identifies or tends to identify the informant.

18. Any and all information contained in any informant file designated by any law enforcement agency including, without limitation, FD 302s and DEA 6s in which the identity of the informant is concealed, inserts that conceal the identity of the informant, and annual letters.

19. Any supervisor's informant file, review log or its equivalent, with respect to any informant utilized in the investigation of this case.

20. All memoranda regarding payment for services or expenses to any informant, including memoranda which contain a justification for the request for payment, all approvals for payment for services or expenses to an informant, and receipts.

21. Any information regarding whether an informant has testified or is expected to testify in connection with this case, and any proposal to pay the informant for such testimony or pay the purported expenses of the informant, and the nature of any discussions regarding payment for testimony with the U.S. Attorney or his designee.

22. Any and all representations made to informants concerning the potential of reward or payment for information including fees or payments which may be earned from forfeited assets or collected fines.

23. The date(s) on which all persons who were informants utilized in this case were "opened" or "closed" as informants, and whether any persons are

currently opened as informants.

24. Information regarding any informant or confidential source providing substantial operational assistance in an undercover capacity.

25. Any information concerning whether any incentivized witness has previously been used as an informant or witness by any federal or state agency or in any federal or state prosecution and, if so, state:

   a. The agency or agencies for which the individual testified;

   b. The dates when such a relationship existed and the length of such relationship;

   c. The dates when and places where the individual testified; and

   d. The compensation (monetary or non-monetary), benefits, favors, or privileges the individual received for services and expenses.

26. Any written record of instructions given to any incentivized witness.

27. Any authorization or approval for any informant or confidential source to engage in any activity that would constitute a crime under state or federal law if engaged in by a private person, and the written findings by supervisory officials that such conduct is necessary to obtain information or evidence and that the need outweighs the seriousness of the conduct involved.

28. Any pretrial services or bail reports regarding any incentivized witness arrested for a criminal offense.

29. Pre-sentence reports prepared regarding any incentivized witness for any conviction or plea of guilty.

30. Any written or verbal communications the government has had with individuals or entities regarding the housing, classification, designation, or assignments regarding the confinement and incarceration of any incentivized witness.

31. Any written or verbal communications the government has had with individuals or entities regarding the privileges, restrictions, and conditions of confinement of any incentivized witness.

32. Any written or verbal communications the government has had with any associate, relative, or spouse regarding the current or future conditions of confinement, release date, classification, or designation of any incentivized witness.

33. A full and complete description of all promises, considerations, rewards, or inducements made by the government, its former or current prosecutors, agents, or agencies to induce or encourage any witness the government intends to call at trial, wherein the government has offered any of the following (including the equivalent under state law):

    a. To refrain from prosecution for an alleged criminal act by any such individual;

b. To refrain from prosecution of a third party for any crime in consideration of any such individual's cooperation;

c. To provide a formal grant of statutory immunity or to provide an informal assurance that any such individual will not be prosecuted in connection with any testimony, cooperation, or information provided;

d. To recommend leniency or a particular sentence for any crime or crimes for which any such individual stands convicted or is expected to be convicted;

e. To provide any assistance or recommendation to any such individual in terms of conditions of confinement, security level, designation, transfer, privileges, cell assignment, or housing;

f. To provide the benefits under any prior agreements notwithstanding any violation of any such agreement by any such individual;

g. To recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;

h. To recommend to United States Probation or a sentencing court a downward adjustment, departure, or variance pursuant to the United States Sentencing Guidelines if that person provides substantial assistance to the government;

i.  To seal any plea or plea agreement involving any such individual;

j.  To provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, etc., to any such person or his friends or relatives in return for that person's testimony, cooperation, or provision of information;

k.  To make any beneficial recommendation regarding any such person to any state or federal agency;

l.  To assist any such person by seeking leniency or forbearance from prosecution by any state agency for any alleged criminal conduct;

m. To make any other efforts to obtain a benefit of any kind or character for any such person, his/her friends or relatives; or

n.  To provide information to any law enforcement agency, prosecution official, or court concerning any such person's provision of information, assistance, or cooperation.

## <u>CONCLUSION</u>

WHEREFORE, Mr. Nantz respectfully requests that this Court enter an order requiring the government to produce all documents and information responsive to his discovery requests set forth above.

This, the 30th day of November, 2021.

Respectfully submitted,

 /s/ *Gary E. Proctor*
Law Offices of Gary E. Proctor LLC
8 E. Mulberry Street
Baltimore, MD 21202
Tel: 410-444-1500
garyeproctor@gmail.com

 /s/ *Jeffrey L. Ertel*
Jeffrey L. Ertel
Federal Defender Program, Inc.
101 Marietta Street, NW, Suite 1500
Atlanta, GA 30303
Tel: 404-688-7530
Jeff_Ertel@fd.org

Counsel for Daniel S. Nantz

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion for Discovery, Inspection, and Disclosure of Exculpatory Evidence Concerning the Government's Use of Incentivized Witnesses was electronically filed this day, November 30, 2021, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all parties of record in this matter.

 /s/ *Jeffrey L. Ertel*
Jeffrey L. Ertel
Jeff_Ertel@fd.org
Counsel for Daniel S. Nantz