**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**Eastern District of Kentucky**
**FILED**

**MAR 1 6 2023**

**AT LONDON**
**Robert R. Carr**
**CLERK U.S. DISTRICT COURT**

**CRIMINAL ACTION NO. 6:19-CR-16-S-REW**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

V.                                        **PLEA AGREEMENT**

**DANIEL S. NANTZ**
   **aka DANIEL SCOTT NANTZ**                          **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, the Defendant, Daniel S. Nantz, will enter a guilty plea to Count One of the Superseding Indictment. Count One charges the Defendant with a violation of 18 U.S.C. §1512(a)(1)(C), murder of a federal witness. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence already in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of Kentucky, unless the Defendant breaches this Agreement. Pursuant to Rule 11(c)(1)(A), the United States will move to dismiss the underlying indictment and Counts Two, Three, Four, Five, Six, and Seven at the time of sentencing.

2. The essential elements of Count One are:

    (a)    The Defendant killed another person; and

(b)     The Defendant did so with the intent to prevent communication to a law enforcement officer or judge of the United States of information relating to the commission of a Federal offense, specifically conspiracy to distribute a mixture or substance containing a detectable amount of methamphetamine.

3. As to Count One the United States could prove the following facts, among others, that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) Beginning on or about March of 2017, and continuing until on or about March 16, 2019, the Defendant received a mixture or substance containing a detectable amount of methamphetamine, from multiple sources of supply (SOS). The Defendant entered into an agreement with these SOS that he would distribute the methamphetamine locally within Whitley County and elsewhere. The Defendant collected U.S. Currency from local methamphetamine buyers and middlemen and provided a portion of those funds back to the SOS for more methamphetamine. Methamphetamine is the Schedule II controlled substance.

(b) In early Spring of 2019, two of the Defendant's SOS and multiple local co-conspirators were federally indicted for conspiracy to distribute methamphetamine. One such co-conspirator was Geri D. Johnson (the victim). The Defendant was aware of some of his co-conspirators' and SOS' indictments, including the victim's, and was concerned he too would be indicted for methamphetamine trafficking. The Defendant was also concerned about the victim's and other co-conspirators cooperation with law enforcement.

(c) Prior to March 16, 2019, the Defendant learned that the victim was interviewed by federal law enforcement agents. The Defendant wrote a handwritten note on a piece of cardboard stating, "Funeral/fed's pulled [redacted name] and geri out asking questions." This handwritten note was recovered from the Defendant's underwear drawer on March 16, 2019 at the murder scene. The Defendant was present on at least one occasion when a federal agent called the victim regarding the victim turning herself in post-indictment.

(d) Prior to March 16, 2019, the Defendant engaged in multiple conversations with the victim about her indictment. In these conversations, the victim told the Defendant that he was a target for the "feds" and the victim could help herself by cooperating with law enforcement against the Defendant. Prior to the murder, the

2

Defendant discussed the victim's indictment and cooperation with at least one of his methamphetamine co-conspirators. The Defendant also made comments about the victim's statement to law enforcement being in a co-conspirator's discovery packet. Therefore, the Defendant was aware the victim had made a statement to law enforcement and agreed to cooperate.

(e) On March 13, 2019, the victim sent the Defendant a text message stating she planned to turn herself into law enforcement. On the same date, the Defendant texted the victim, "I'll kill you whore." On March 14, 2019, the Defendant texted the victim, "Your very dangerous for me. Very very dangerous."

(f) On March 16, 2019, the victim was home alone with the Defendant's minor children at the Defendant's trailer in Whitley County. The Defendant ordered his minor children into their bedroom and followed the victim outside.   While outside the Defendant was in possession of a .38 revolver. The Defendant intentionally and deliberately fired two rounds which hit the victim. One round hit the victim in the back right shoulder blade and the other pierced the victim's neck.

(g) An autopsy revealed the round through the victim's neck, caused the victim to drown in her own blood, which was the ultimate cause of death. At the time of the victim's death, the victim and Defendant were engaged in a methamphetamine trafficking conspiracy together and with others, and the Defendant was concerned that the victim would communicate or had communicated regarding that conspiracy to federal law enforcement.

4. The statutory punishment for Count One is life imprisonment and not more than a $250,000 fine. Based upon the Defendant's March 2022 deauthorization request, the Attorney General ordered the United States to withdraw the Notice of Intent to Seek the Death Penalty. Therefore, the Death Penalty is not authorized in this case. A mandatory special assessment of $100 applies for Count One, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.  The Defendant agrees that the victim of his offense is entitled to restitution under 18 U.S.C. § 3663A.

5. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

    (a) The 2021 version of the United States Sentencing Guidelines (U.S.S.G.) Manual shall be used to determine the Defendant's guideline range.

    (b) Pursuant to U.S.S.G. § 3E1.1, unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. There is no agreement between the parties concerning the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. With the exception of claims of ineffective assistance of counsel, the Defendant waives the statutory right to collaterally attack the guilty plea, conviction, and sentence. The Defendant also waives the statutory right to appeal the guilty plea, conviction, and sentence.

8. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other

third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

9. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees

5

that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

10. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

11. This document ~~and the supplement~~ contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

12. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

13. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

6

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 2/15/23

Jenna E. Reed
Assistant United States Attorney

Date: 1-19-23

Daniel S. Nantz
Defendant

Date: 1-19-23

Gary E. Proctor
Attorney for Defendant

Date: 1-19-23

J. Ertel /G.P.

Jeff Ertel
Attorney for Defendant

7