UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | No. 6:19-CR-16-REW-EBA |
| v. ) | No. 6:24-CV-105-REW-EBA |
| ) | |
| DANIEL S. NANTZ, ) | OPINION AND ORDER |
| ) | |
| Defendant/Petitioner. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant/Petitioner Daniel S. Nantz, who murdered his pregnant girlfriend and earned a life sentence, moves to vacate, set aside, or correct that sentence under 28 U.S.C. § 2255. *See* DE 439 (Motion). Upon review, the Court denies § 2255 relief and issues no certificate of appealability. The Government responded to the motion, and Nantz did not reply or seek an extension to reply.[1]

I. **BACKGROUND**

In July 2019, the Government filed a seven-count superseding indictment against Nantz. *See* DE 32 (Superseding Indictment). Nantz eventually pleaded guilty to Count 1 of the Superseding Indictment for murdering a federal witness (18 U.S.C. § 1512(a)(1)(C)). *See* DE 416 (Plea Agreement); DE 417 (Rearraignment Minutes). At his rearraignment hearing, Nantz, under oath, confirmed that his choice to plead guilty was "free and voluntary" and that he was not induced

---

[1] On review of the docket, the Court does see that Nantz twice corresponded to the Clerk, seeking transcripts. *See* DE 449 & 450. However, Nantz raises arguments that either are too generic to warrant analysis or are resolved conclusively by the record. For instance, Nantz argues over guideline enhancements, but the case required a life term by statute, so the guideline issues were without ultimate impact. Thus, the Court does not see a transcript right under the standards of § 753(e), given the lack of merit in the motion and that Nantz's claims do not depend on transcript content.

or threatened to plead guilty.  *See* DE 443 (Rearraignment Transcript) at 25:4–6, 40:21–41:9.  He confirmed his readiness, specifically that his counsel provided discovery access, was available and responsive, and assisted him effectively.  *See id.* at 23-25.

In the plea agreement, Nantz, who was involved in a meth trafficking scheme, admitted that he intentionally and deliberately shot and killed his co-conspirator, who was under indictment, after she began cooperating with federal agents and informed Nantz of her intention to turn herself over to law enforcement.  *See* DE 416 ¶ 3.  The murder occurred outside of Nantz's home while his children were indoors.  *See id.*  At the time, the victim was pregnant with Nantz's child, and he was aware that she was pregnant.  *See* DE 437 (Presentence Investigation Report) ¶ 7.

At Nantz's sentencing hearing, three separate witnesses testified that he maintained cameras outside of his home, facing the driveway, front porch, and garage.  *See* DE 444 (Sentencing Transcript) at 24:1–25, 35:15–36:3, 72:3–5.  Footage from the cameras was shown on a live feed on a television in Nantz's bedroom.  *See id.* at 24:1–25.  A DVR box was hooked up to the same television and recorded the footage.  *See id.* at 28:12–29:3, 36:4–23, 72:1–2, 72:9–18, 94:6–16.  Directly following the murder, Nantz instructed David Huff (another co-conspirator) to remove the DVR from the house, while Nantz purportedly drove the victim to the hospital.  *See id.* at 70:1–4, 71:22–24; *see also* DE 437 ¶¶ 14, 17.  Huff grabbed the DVR and threw it on a pile of clothes in the kitchen before leaving the house.  *See* DE 444 at 73:20–74:14.  As Huff ushered Nantz's children out through the back door, a white vehicle pulled into the driveway.  *See id.* at 75:5–22, 79:9–14.  The vehicle contained Delmar Nantz (Defendant Nantz's uncle) and Bill Nantz (Defendant Nantz's father).  *See id.* at 110:13–111:5.  After Daniel Nantz dumped the victim at the hospital, he called his father in a phone call that lasted approximately 1 minute.  *See id.* at 129:5–10, 129:25–130:3.  Bill entered his son's property before the arrival of law enforcement, and ten

to fifteen minutes later, he picked up his grandchildren from Huff. *See id.* at 76:6–11, 110:10–20. Although Bill Nantz previously implied that he possessed the recording (and later backtracked), law enforcement officers did not locate a DVR system upon their investigation, nor were the recordings ever found. *See id.* at 109:12–19, 111:21–112:3.

At sentencing, Nantz's counsel objected to two guidelines enhancements: 1) the victim's status as a vulnerable victim under U.S.S.G. § 3A1.1(b)(1) and 2) obstruction of justice under U.S.S.G. § 3C1.1. *See id.* at 8:23–9:4. The Court overruled both objections. *See* DE 435 (Minute Entry). Though the Court did address the objections, the Court sentenced Nantz to life imprisonment, which was the mandatory sentence under the statute. *See* DE 436 (Judgment); *see also* 18 U.S.C. § 1512(a)(3)(A); 18 U.S.C. § 1111(b). The Plea Agreement, PIR, and rearraignment colloquy each reflected the mandatory life sentence applicable in the case. DE 416 ¶ 4; DE 437 ¶ 75; DE 417; DE 443 at 37:15–25 (confirming Nantz's understanding that "the required sentence would be life in prison").

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. *See* 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the petitioner must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'") (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A defendant alleging a constitutional basis for § 2255 relief (as here) must establish "an error of constitutional magnitude" and show that the error had a

3

"substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In moving under § 2255, the petitioner generally bears the burden of proving factual assertions by a preponderance of the evidence. *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

A petitioner claiming ineffective assistance of counsel ("IAC") must prove both deficient performance and prejudice. *See Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012). To prove deficient performance, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A petitioner meets this burden by showing that "counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064–65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065. The prejudice inquiry requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must consider the "totality of the evidence before the judge or jury." *Id.* at 2069; *see also Gilbert v. United States*, 64 F.4th 763, 771 (6th Cir. 2023) (defining prejudice in plea negotiation context: "prejudice may lie where a petitioner demonstrates that counsel's deficient performance infected his decisionmaking process, and thus undermine[d] confidence in the outcome of the plea process.") (citation omitted).

4

### III. ANALYSIS

A word at the outset. This case was litigated over several years with the death penalty on the table. As such, Nantz, given two lawyers, had the benefit of appointed learned counsel and a team that included the expertise and resources of the FPD in Atlanta. Needless to say, the defense team had access to all of the capacious resources typically due a defendant facing a federal capital prosecution. This backdrop informs the Court's reaction to Nantz's conclusory criticisms.

Nantz raises three IAC claims, stating that his counsel was deficient in the following ways: 1) "counsel failed to object to the Court's improper application of U.S.S.G. § 3A1.1(b)(1), when the objection was clearly supported by the record" because the record "establish[ed] that the victim was chosen or 'targeted' due to her cooperation with law enforcement, <u>not</u> because of the victim's vulnerability as the statute suggests;" 2) "counsel failed to object to the Court's improper application of U.S.S.G. § 3C1.1 for obstruction of justice, when counsel had at his disposal supportive evidence that would have been favorable to the objection;" and 3) counsel advised him to enter a guilty plea "without properly investigating [his] case," resulting in Nantz being "denied his three points for acceptance of responsibility" and "forced . . . to waive or forego a proceeding that he was otherwise entitled to." DE 439 at 4–5, 7.

#### A. Objections to Sentencing Enhancements

Nantz's arguments regarding his counsel's objections to the two sentencing enhancements fail as a matter of fact and a matter of law.

As for the performance of counsel, contrary to Nantz's statements, his counsel *did* indeed object to the two sentencing enhancements. *See* DE 444 at 8:23–9:4. The PIR also reflects the objections. DE 437, Addendum. Those objections were unsuccessful because the Court overruled them. *See* DE 435.

5

Even if Nantz could demonstrate deficient performance by his counsel (he cannot), he is unable to establish that the result of his sentencing would have been different as necessary to prove *Strickland* prejudice. Whether or not his counsel objected, sufficient evidence in the record supported the application of both enhancements. On this point, the Court will address the enhancements in turn.

U.S.S.G. § 3A1.1(b)(1) instructs the Court to increase a defendant's offense level by 2 levels "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). Though case law on the issue is not particularly extensive, courts have consistently found that pregnant women like Nantz's victim are within the category of "vulnerable victims" contemplated by § 3A1.1(b)(1). *See, e.g., United States v. Hadden*, No. 23-6822-CR, 2024 WL 4456203, at *5 (2d Cir. Oct. 10, 2024); *United States v. Cline*, 986 F.3d 873, 880 (5th Cir. 2021); *United States v. James*, 139 F.3d 709, 714–15 (9th Cir. 1998). Nantz undisputedly knew the victim was pregnant and far along with their child. *See* DE 437 ¶ 7. Nantz misconstrues § 3A1.1(b)(1). The guideline does not require the defendant to have *targeted* the victim because of her vulnerability; mere knowledge of the vulnerability warrants the enhancement. *See Cline*, 986 F.3d at 880 (rejecting similar argument that § 3A1.1(b)(1) required the defendant to have targeted the victim because of her pregnancy). Thus, § 3A1.1(b)(1) properly applied.

U.S.S.G. § 3C1.1 states that the Court should increase a defendant's offense level by 2 levels "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct[.]" U.S.S.G. § 3C1.1. Sufficiently obstructive conduct

6

includes "[d]irecting or procuring another person to destroy or conceal evidence that is material to an official investigation." U.S. Sent'g Guidelines Manual § 3C1.1 cmt. n.4(D) (U.S. Sent'g Comm'n 2021). § 3C1.1 applies because Nantz willfully obstructed the murder investigation by directing others to remove from his house the DVR box that recorded video footage of the exterior of his house, the locale of the murder. First, Nantz directed Huff (his co-conspirator) to remove the DVR. *See* DE 444 at 70:1–4, 71:22–24; *see also* DE 437 ¶ 14. Although Huff maintains that he did not actually remove the DVR and instead left it on a pile of clothes, *see* DE 444 at 73:20–74:14, Nantz's mere attempt to obstruct the investigation justifiably implicated the enhancement. *See* § 3C1.1. Second, Nantz presumably (and as a sturdy inference) directed his father (Bill) to remove (or destroy) the same DVR. After dropping the victim off at the hospital, Nantz made a minute long phone call to Bill. *See* DE 444 at 129:5–10, 129:25–130:3. As Huff exited Nantz's house but before law enforcement arrived, a white vehicle containing Bill pulled up to the residence. *See id.* at 75:17–22, 79:9–14, 110:10–111:5. Though he later backtracked, Bill arrogantly implied to law enforcement that he possessed the DVR footage, but the footage was never disclosed or uncovered by law enforcement. *See id.* at 109:12–19, 111:21–112:3. This was enough to find, by a preponderance of the evidence, that Bill removed and/or destroyed the DVR (and the recordings it contained) at Nantz's request. *See United States v. Iossifov*, 45 F.4th 899, 923 (6th Cir. 2022) ("The government bears the burden of proving by a preponderance of the evidence that the enhancement applies."). The obstructive conduct related to the murder because the crime occurred right outside Nantz's home, and the DVR recorded footage from cameras facing that area. *See* DE 444 at 24:1–25, 35:19–36:23, 72:1–5, 72:8–24, 94:6–16; DE 416 ¶ 3. Destruction of the video footage meant destruction of evidence of Nantz's crime as it occurred in real time. Therefore, the § 3C1.1 enhancement was appropriate.

7

Most importantly, while the Court analyzed the enhancements because of Nantz's objections to them, the enhancements themselves, irrespective of resolution, had no bearing on the ultimate sentence. The Court was bound to impose the statutory mandatory minimum sentence of life imprisonment. *See* 18 U.S.C. § 1512(a)(3)(A) (incorporating the punishment for first-degree murder under 18 U.S.C. § 1111(b)). That is, Nantz's sentence would have remained the same, regardless of whether the enhancements applied and irrespective of his offense level. *See United States v. Sydnor*, No. 6:16-021-DCR, 2020 WL 4934600, at *4 (E.D. Ky. Aug. 24, 2020) ("Further, [the defendant] has not demonstrated prejudice because he was sentenced to the mandatory minimum term of imprisonment permitted under 21 U.S.C. § 841(b)(1)(A)."); *United States v. Brummett*, No. 6:07-103-DCR, 2013 WL 5798013, at *46 (E.D. Ky. Oct. 28, 2013) ("Given . . . that Defendant received the statutory mandatory minimum sentence, if construed as ineffective assistance claims, Defendant cannot show any prejudice."). The enhancements did not impact Nantz's adjudged sentence; thus, he cannot show prejudice in counsel's approach to the enhancements. There was no impropriety by counsel, but even if there were, the absence of prejudice would defeat the § 2255 IAC sentencing claims.

Because Nantz cannot satisfy either *Strickland* prong, his IAC claims as to the two sentencing enhancements fails.

### B.    Advice to Enter Guilty Plea

In his third claim, Nantz states, without any detail, that counsel advised him to plead guilty "without properly investigating [his] case." *See* DE 439 at 7. Nantz does not specifically identify what his counsel failed to investigate and how that failure rendered their performance deficient. "[A] motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. A claim that merely states legal conclusions without substantiating factual

8

allegations lacks merit." *United States v. McIver*, No. 5:17-069-DCR, 2021 WL 4504682, at *4 (E.D. Ky. Oct. 1, 2021) (citation omitted) (citing *Short v. United States*, 504 F.2d 63 (6th Cir. 1974)).  Absent factual allegations to support his claim, Nantz fails to establish that his counsel's advice in this context was constitutionally deficient.

Nantz has the burden under *Strickland* and § 2255, and making conclusory and generic criticisms of counsel simply will not suffice.  Movant does not cite a single person, circumstance, or case aspect that counsel failed to investigate.  Intoning "failure to investigate," free of any factual substantiation, will not meet the taxing *Strickland* bar.  *See Millay v. Cheeks*, No. 22-1176, 2022 WL 4015653, at *3 (6th Cir. July 12, 2022) (rejecting COA and stating: "As the district court pointed out, Millay failed to explain how his counsel's investigation or witness interviews were deficient or identify any evidence or witnesses that his counsel should have presented. Reasonable jurists could not disagree with the district court's determination that Millay's conclusory allegations were insufficient to establish his trial counsel's ineffectiveness under the *Strickland* standard."); *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance, however, like those Wogenstahl makes here, are insufficient to state a constitutional claim.").

For similar reasons, Nantz cannot adequately prove that his counsel's alleged failure to properly investigate his case prejudiced him.  He argues that the purported failure to investigate prejudiced him in two ways.  First, Nantz states that he was "denied his three points for acceptance of responsibility."  DE 439 at 7.  This is factually inaccurate; Nantz indeed received the three-point offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  *See* DE 437 ¶ 32; DE 435.  And, as previously discussed, the statutory mandatory minimum was the driver of Nantz's sentence, not his offense level or the resulting guideline range.  Second, Nantz also claims

9

that because he pleaded guilty, he was "forced . . . to waive or forego a proceeding that he was otherwise entitled to," presumably, a trial. DE 439 at 7. However, as with the performance prong, the lack of supporting factual detail dooms Nantz's attempt to show prejudice. Because Nantz fails to explain the content of the desired investigation and what it would have revealed about his case, the Court is unable to assess how such an investigation would have affected Nantz's decision to plead guilty. *See United States v. Money*, No. 6:16-cr-00056-GFVT-EBA-4, 2021 WL 1087470, at *6 (E.D. Ky. Mar. 22, 2021) ("A claim of counsel's failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome.") (citation and quotation marks omitted). Thus, based on the record before it, Nantz has not met his burden to demonstrate prejudice, *i.e.,* that there is a reasonable probability that he would have eschewed the guilty plea and proceeded to trial had his counsel conducted the investigation sought. And again, Nantz swore under oath at the plea hearing that he was ready, that his lawyers had been available, responsive and effective, that he enjoyed adequate access to all materials, and that he was making the free, voluntary, and well-informed choice to plead guilty. He denied any issue between him and counsel that would contradict these sworn positions. *See* DE 443 at 23-25.

Since Nantz also has not fulfilled the prejudice prong on either theory, his advice of counsel IAC challenge fails. Having rejected all three claimed bases for relief, the Court denies Nantz's § 2255 motion in its entirety.

### IV.  CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). Nantz has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* claims conclusively fail for all the reasons discussed above. The mandatory life term trumps the underlying guideline claims, which also independently lack merit, and he provides utterly no reason to question the propriety of counsel's conduct with respect to the plea or to find *Strickland* prejudice. Reasonable jurists would not find the Court's determination debatable, and accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** DE 439 in full and issues no certificate of appealability as to the raised claims.

This the 7th day of November, 2025.

Signed By:
Robert E. Wier
United States District Judge